IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERONIMO VASQUEZ** | : | CIVIL ACTION |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM H. RYAN, JR.,** *et al.* | : | NO. 11-2300 |

MEMORANDUM OPINION

**Savage, J.**                                                                          **March 20, 2012**

Jeronimo Vasquez moves for reconsideration of our dismissal of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Vasquez, a noncitizen immigrant, seeks relief from a state court conviction, arguing that his lawyer's failure to inform him of the immigration consequences of his guilty plea constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Because Vasquez was not "in custody," we dismissed his petition for lack of subject matter jurisdiction. Vasquez then timely moved for reconsideration, arguing that we took an overly narrow view of the custody requirement. After a thorough review of the law and facts of this case, we conclude that our previous decision was correct. At the same time, we note that Vasquez's habeas petition was untimely. Therefore, we shall deny the motion for reconsideration.

**Background**

On June 11, 2002, Vasquez pleaded guilty to three drug-related offenses in the Court of Common Pleas of Bucks County. According to Vasquez, his public defender did not inform him before he pleaded guilty that, as a noncitizen immigrant, he might be deported as a result of his guilty plea. There is no question that his drug conviction renders him subject to deportation. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (2006); *Padilla v. Kentucky*,

130 S.Ct. 1473, 1483 (2010).  The government has taken no action to deport him.

On the same day he pleaded guilty, Vasquez was sentenced to two years probation. Two months later, he filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq*. (1997), claiming ineffective assistance of counsel.  His petition was denied on January 17, 2003.

On March 31, 2010, the Supreme Court in *Padilla v. Kentucky* held that a defense attorney's failure to inform her client of the immigration consequences of his guilty plea may constitute ineffective assistance of counsel entitling the defendant to post-conviction relief.  130 S.Ct. at 1483-84.  Exactly one year later, Vasquez filed his petition for writ of habeas corpus, arguing that *Padilla* established a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" under 28 U.S.C. § 2244(d)(1)(C).  By the time he filed his petition, Vasquez had served his probationary sentence.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 59(e), Vasquez moves for reconsideration of our dismissal of his petition for lack of subject matter jurisdiction.  A Rule 59(e) motion is subject to the "sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).  A party may move the court to alter or amend a judgment under Rule 59(e) on one of three grounds: "(1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Cottrell v. Good Wheels*, No. 11-3409, 2012 WL 171941, at *3 (3d Cir. Jan. 23, 2012) (per curiam) (citing *N. River Ins. Co.*

*v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Without saying so, Vasquez relies on the third ground, arguing that we erroneously held that he was not in custody when he filed his habeas petition. He contends that he is in custody because he is excludable as a result of his criminal conviction. Consequently, he cannot travel outside the United States because he could not legally reenter. He contends that these consequences are sufficient to satisfy the "in custody" requirement for habeas relief.

## Discussion

A petition under 28 U.S.C. § 2241 is a vehicle for challenging the "execution" of the defendant's state court sentence, such as a denial of parole. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (quoting *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)). However, Vasquez does not attack the execution of his sentence. Rather, he challenges the validity of his underlying conviction. A petition for relief from an unlawful state court conviction is properly brought under 28 U.S.C. § 2254. *Coady*, 251 F.3d at 485-86.[1] Therefore, we shall analyze Vasquez's petition as one under § 2254.

### *Timeliness*

Because we determined that Vasquez was not in custody, we did not address other issues raised by his petition in our original order, including whether the petition was timely

---

[1] The Third Circuit recognized in *Woodall* that the applicability of § 2241 is, in some respects, "far from clear." 432 F.3d at 241. Even if Vasquez could proceed under § 2241, however, his petition would suffer the same fate as it does under § 2254. Vasquez's petition is untimely under § 2244(d)(1), which applies to petitions challenging "custody pursuant to the judgment of a State court" under both § 2241 and § 2254. Additionally, § 2241(c)(1) contains the same "in custody" requirement as § 2254(a), which Vasquez fails to meet. *Amenuvor v. Mazurkiewicl*, No. 11-4086, 2012 WL 75960, at * 2 (3d Cir. Jan. 11, 2012) (per curiam) (citing *Kolkevich v. Att'y Gen.*, 501 F.3d 323, 334, n.6 (3d Cir. 2007)).

filed. We now determine that Vasquez's petition was untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for filing a § 2254 habeas corpus petition. 28 U.S.C. § 2244(d)(1); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). The statute provides that the one-year period begins with the latest of one of four "triggering events:"

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Fielder v. Varner*, 379 F.3d 113, 116 (3d Cir. 2004). The statutory period is tolled while a "properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2); *Pace*, 544 U.S. at 410; *Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir. 2009).

Vasquez's conviction became final nearly ten years ago, and his PCRA petition was denied more than nine years ago. Despite this passage of time, Vasquez argues that his petition was timely under § 2244(d)(1)(C) because the Supreme Court in *Padilla* recognized a new constitutional right when it held that a noncitizen defendant may be denied effective assistance of counsel if his attorney fails to advise him that a guilty plea might result in deportation. If his argument is correct, Vasquez's petition is timely because

4

he filed it on the last day of the statute of limitations.

To determine whether *Padilla* provides a triggering event for the statue of limitations under § 2244(d)(1)(C), we look to the retroactivity rules from the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989). *See Reinhold v. Rozum*, 604 F.3d 149, 153-54 (3d Cir. 2010). *Teague* "set forth two regimes governing the retroactive application of constitutional principles to criminal cases" by "divid[ing] the world into two categories, 'old rules' and 'new rules.'" *United States v. Orocio*, 645 F.3d 630, 637 (3d Cir. 2011). If a rule of criminal law announced in a case "was not dictated by precedent existing at the time the defendant's conviction became final," that rule is a "new rule" under *Teague*. *Id.* (quoting *Teague*, 489 U.S. at 301). A new rule does not apply retroactively on collateral review except under two narrow exceptions: "(1) the new rule places certain kinds of criminal conduct beyond the power of the criminal law-making authority to proscribe; or (2) the new rule is a watershed rule of criminal procedure that alters our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Id.* (quoting *Teague*, 489 U.S. at 311) (internal quotations and alterations omitted); *see also Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (stating that the *Teague* exceptions apply only in "limited circumstances"). Conversely, an "old rule"–one that is dictated by existing precedent–is always retroactively applicable on both direct and collateral review. *Orocio*, 645 F.3d at 637 (citing *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)).

Although *Teague* informs our interpretation of § 2244(d)(1)(C), the *Teague* retroactivity rules and § 2244(d)(1)(C) are different in an important respect. The statute only codifies *Teague*'s "new rule" regime. It does not codify *Teague's* "old rule" regime.

Section 2244(d)(1)(C) explicitly requires that the Supreme Court case at issue "newly recognize" a right, which refers to announcing a "new rule" under *Teague. See Reinhold*, 604 F.3d at 152-54 (looking to *Teague* to determine whether a right was newly recognized under § 2244(d)(1)(C)). Therefore, the Court's pronouncement of an old rule cannot trigger the statute of limitations under § 2244(d)(1)(C). *See Peterson v. Cain*, 302 F.3d 508, 511-15 (5th Cir. 2002) (holding that because the Supreme Court did not announce a new rule in *Campbell v. Louisiana*, 523 U.S. 392 (1998), that decision was not a triggering event for the statute of limitations under § 2244(d)(1)(C)).

The Third Circuit has held that *Padilla* announced an old rule because its holding "followed directly from *Strickland* and long-established professional norms" regarding effective assistance of counsel. *Orocio*, 645 F.3d at 641.[2] Therefore, under circuit precedent, *Padilla* cannot be a triggering event for the statute of limitations under § 2244(d)(1)(C).[3]

In the alternative, Vasquez argues that he is entitled to equitable tolling of the

---

[2] The Third Circuit went on to hold that Orocio could avail himself of the *Padilla* decision on collateral review. However, *Orocio* did not consider whether the petition was timely; rather, it considered only whether *Padilla* was retroactive under *Teague*. Although there is considerable overlap between *Teague* and various provisions of AEDPA, including § 2244(d)(1)(C), the Supreme Court and Third Circuit have held that *Teague* and those AEDPA provisions present distinct inquiries, and that a petitioner must satisfy both independently. *See Horn v. Banks*, 536 U.S. 266, 272 (2002) ("[I]f our post-AEDPA cases suggest anything about AEDPA's relationship to *Teague*, it is that the AEDPA and *Teague* inquiries are distinct. . . . Thus, in addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* analysis when the issue is properly raised by the state." (internal citations omitted)); *Greene v.Palakovich*, 606 F.3d 85, 100-01 (3d Cir. 2010) (citing *Horn*, 536 U.S. at 272).

[3] The Seventh and Tenth Circuits have disagreed with *Orocio* and have held that *Padilla* announced a new rule under *Teague*. *See United States v. Chang Hong*, – F.3d –, No. 10-6294, 2011 WL 3805763, at *7-8 (10th Cir. Aug. 30, 2011); *Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir. 2011). The Tenth Circuit went on to determine that *Padilla* was not retroactively applicable on collateral review because neither of the two *Teague* exceptions applied. *Chang Hong*, 2011 WL 3805763, at *9-10. The Tenth Circuit therefore held that *Padilla* did not provide a triggering event for the statute of limitations under § 2255(f)(3)–a nearly identical provision to § 2244(d)(1)(C) that applies to challenges to federal detention brought under § 2255. The Seventh Circuit did not consider the retroactivity issue.

statute of limitations for two reasons. First, he argues that *Padilla* provided his earliest meaningful opportunity to challenge his guilty plea because Pennsylvania law does not recognize his constitutional claim. Second, he contends that strict application of the statute of limitations would be unfair because the consequences of his guilty plea far outweigh the gravity of the offense.

A petitioner seeking equitable tolling bears the burden of establishing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented him from filing on time. *Pace*, 544 U.S. at 418. Equitable tolling should be used sparingly. *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)).

The existence of unfavorable state law is not an "extraordinary circumstance" that prevents the petitioner from filing on time. *See Corrigan v. Barbery*, 371 F. Supp. 2d 325, 331 (W.D.N.Y. 2005). The purpose of filing a § 2254 petition is to challenge a conviction imposed and upheld under state law in violation of the Constitution or federal law. The existence of unfavorable state law is the reason a petitioner seeks habeas corpus. It does not prevent the petitioner from doing so.[4]

Additionally, the alleged disparity between Vasquez's crime and the consequences of deportation is not an extraordinary circumstance. The term "extraordinary circumstance" refers not to "the uniqueness of the petitioner's circumstances," but rather

---

[4] Similarly, a favorable decision is not a "factual predicate" that triggers the statute of limitations under § 2244(d)(1)(D). *Mitchell v. Beard*, No. 06-4746, 2010 WL 1135998, at *1 n.3 (E.D. Pa. Mar. 24, 2010) (Gardner, J.) (citing circuit court cases). As Judge Gardner recognized, allowing a petitioner to wait until any favorable case is decided would eviscerate § 2244(d)(1)(C). *Id.* The petitioner could wait indefinitely to file his habeas petition until any favorable decision, even one that did not meet the high standard of § 2244(d)(1)(C), was handed down.

to the severity of the obstacle that prevented the petitioner from filing on time. *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010) (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

Vasquez must have filed his petition within one year of the date his conviction became final, plus the tolling period while his PCRA petition was pending. 28 U.S.C. § 2244(d)(1)(A), (d)(2). Consequently, he was required to file his petition in or around November 2003. Because he failed to file until 2011, his petition was untimely.

## *Subject Matter Jurisdiction*

Even if Vasquez's petition had been timely filed, we reaffirm our ruling that we lack subject matter jurisdiction. To establish subject matter jurisdiction over his § 2254 petition, Vasquez must show that, at the time he filed his petition, he was "in custody" pursuant to the conviction he is attacking. *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003) (per curiam) (citing *Maleng v. Cook*, 490 U.S. 488, 490-92 (1989)).[5]

We agree with Vasquez that the custody requirement is read liberally and is not limited to physical restraint. *Id.* Rather, "custody" refers to "significant restraints on liberty which [are] not shared by the public generally, along with some type of continuing governmental supervision." *Id.* (quoting *Barry v. Bergen Cnty. Prob. Dep't*, 128 F.3d 152, 160 (3d Cir. 1997)) (internal quotations and alterations omitted). For example, a petitioner is considered to be in custody while he is on parole because the terms of parole include

---

[5] We determine subject matter jurisdiction by looking at the petitioner's condition only at the time he filed his petition. *Obado*, 328 F.3d at 717 (citing *Maleng*, 490 U.S. at 490-92). Thus, the court maintains jurisdiction when the petitioner is released from custody while the action is pending, so long as he met the jurisdictional requirements when he filed. *See Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968); *see also Chong v. Dist. Dir., INS*, 264 F.3d 378, 382-83 (3d Cir. 2001).

many restrictions on his liberty. *Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963); *see also Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 300-01 (1984) (holding that the petitioner was in custody after he had been released on personal recognizance pending retrial).

Vasquez argues that the threat of future deportation proceedings render him in custody. He reasons that, like a parolee, he suffers from significant restrictions on his liberty because of his conviction. In particular, he claims that he cannot travel abroad because he "would almost certainly be denied reentry" into the United States.

A petitioner is no longer in custody after his sentence has fully expired. *See Maleng*, 490 U.S. at 492 ("While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."). This is true even where the petitioner suffers collateral restrictions on his liberty because he has been convicted of a crime, such as loss of the right to vote or inability to hold public office. *Id.* at 491-92.[6]

---

[6] In a case such as this where the petitioner has been released from custody but continues to suffer collateral harm because of his conviction, the questions of subject matter jurisdiction and mootness might easily be confused. These questions are importantly distinct. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (distinguishing the jurisdictional "in custody" requirement from mootness). Whereas jurisdiction is determined by a one-time snapshot of the petitioner's condition at the time of filing, *see supra* note 5, the doctrine of mootness requires that the case present a live controversy at all stages of the proceedings. *Id.*; *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

Although the petitioner's release from custody while the case is pending does not affect jurisdiction, it may render the case moot. *Spencer*, 523 U.S. at 7. This is because release from custody often eliminates the only source of the petitioner's harm and leaves the court unable to provide any meaningful relief. *Id; Burkey*, 556 F.3d at 147. However, the case is not moot post-release where the petitioner continues to suffer collateral consequences of the conviction. Such consequences give the petitioner a continuing interest in the case and may be redressed by a favorable ruling. *Spencer*, 523 U.S. at 7. Vasquez's petition is not moot because the threat of deportation creates a continuing controversy. *See United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) ("Following *Carafas*, we conclude that Romero-Vilca's petition is not moot in light of the potential for deportation that flows from his conviction.").

Conversely, if the petitioner was not in custody at the time of filing, the later existence of collateral

In *Maleng*, the Supreme Court held that a petitioner who was currently serving a sentence from a 1976 conviction could not challenge the validity of a 1958 conviction, even though the existence of the earlier conviction enhanced his sentence for the later one. *Id.* at 492-93. The Court determined that because the petitioner had completed his original sentence, he was no longer in custody pursuant to that conviction. *Id.* at 492. The Court found it immaterial that he was still suffering a collateral consequence of the original conviction. *Id.* Courts of appeals have uniformly held that a petitioner facing deportation as a result of his conviction is not in custody once he has completed his sentence prior to filing a habeas petition. *See Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008); *Resendiz v. Kovensky*, 416 F.3d 952, 956-58 (9th Cir. 2005); *Broomes v. Ashcroft*, 358 F.3d 1251, 1254 (10th Cir. 2004); *Kandiel v. United States*, 964 F.2d 794, 796 (8th Cir. 1992).

Vasquez argues that the Supreme Court's recent holding in *Padilla* altered the rule in *Maleng* and its progeny. In *Padilla*, the Supreme Court of Kentucky had distinguished between "collateral" matters in a defendant's decision to plead guilty–for example, certain rights that a defendant may lose in the future because he is a convicted felon–and those matters that directly relate to the sentence the court may impose, such as the nature and duration of the sentence. 130 S.Ct. at 1481. The state court had determined that immigration consequences were a collateral matter, and that a lawyer's failure to advise a defendant on those consequences did not violate the Sixth Amendment under *Stickland*.

---

consequences does not give the court jurisdiction. *Maleng*, 490 U.S. at 492. The petitioner either meets the "in custody" requirement at the time of filing or not at all.

*Id.* Rejecting the state court's approach, the Supreme Court concluded that "[t]he collateral versus direct distinction is . . . ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Id.* at 1482. The Court, upon examining the nature of deportation itself, noted that deportation is a "particularly severe 'penalty'" that is "intimately related to the criminal process," and is "nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 1481. The Court therefore held that an attorney's failure to advise a client about the immigration consequences of a guilty plea may constitute ineffective assistance of counsel. *Id.* at 1482. Thus, courts must perform a standard *Strickland* analysis in such a case. *Id.* at 1482-83.

Vasquez argues that *Padilla*, by holding that deportation is not merely a collateral consequence of a conviction, implicitly expanded the definition of "in custody" under § 2254 to include petitioners facing deportation proceedings. He points out that *Maleng* and its progeny drew a bright line for the "in custody" requirement between petitioners who are still serving their sentences when they file and those who are merely facing "collateral consequences" of their convictions. He claims that *Padilla* rejected that bright line as it pertains to deportation, and held that courts should treat the threat of deportation like part of a defendant's sentence because of its severity and closeness to the criminal process. Therefore, according to Vasquez, he is in custody just as he would be if he were still serving his sentence from his guilty plea. At least one district court has agreed with this argument. *See Rodriguez v. United States*, No. 10-23718, 2011 WL 3419614, at *5-6 (S.D. Fla. Aug. 4, 2011) (holding that, after *Padilla*, a petitioner who had fully served her sentence was in custody because she faced deportation).

Vasquez's argument conflates two distinct inquiries. The *Padilla* Court was not

11

faced with the jurisdictional question of whether the defendant was in custody for the purposes of obtaining federal post-conviction relief.[7]  Rather, it considered whether the Sixth Amendment entitles a criminal defendant to be advised on the possible immigration consequences of his guilty plea before he pleads guilty.  That question goes to the merits of Vasquez's constitutional claim.  The simple fact that courts use the term "collateral consequences" in reference to both § 2254 and the Sixth Amendment does not mean that they are referring to identical concepts.  We determine the meaning of a particular term not in a vacuum but in light of the legal context surrounding it.  *See Johnson v. United States*, 130 S.Ct. 1265, 1270 (2010) ("[W]e do not force term-of-art definitions into contexts where they plainly do not fit . . . ." (quoting *Gonzales v. Oregon*, 546 U.S. 243, 282 (2006) (Scalia, J., dissenting) (internal quotations omitted))).  The definition of "collateral consequences" in one context is not necessarily the same as that in another context.

*Padilla* did not address the "in custody" requirement, and no decision has purported to alter *Maleng's* bright-line rule that a petitioner is not in custody after he has fully served his sentence.  *See Fenton v. Ryan*, No. 11-2303, 2011 WL 3515376, at *2 (E.D. Pa. Aug. 11, 2011) (holding that *Padilla* did not alter the custody requirement and that a petitioner is not in custody after completing his sentence merely because he faces deportation); *see also United States v. Krboyan*, No. 10-2016, 2010 WL 5477692, at *6-7 (E.D. Cal. Dec. 30, 2010) (same); *Walker v. Holder*, No. 10-10802, 2010 WL 2105884, at *1 (D. Mass.

---

[7] Padilla did not file a federal habeas petition.  Rather, he appealed from the Supreme Court of Kentucky's denial of his state law petition for post-conviction relief.  *Padilla*, 130 S.Ct. at 1478.  Additionally, Padilla was in state custody when he filed his petition.  *See Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008).

May 24, 2010) (same). *Padilla* may recognize that Vasquez had a constitutional right to be counseled about possible deportation, but it does not give the court jurisdiction over his habeas petition.

Even if Vasquez's argument had merit, accepting it would require us to decide that the Supreme Court's holding on one matter implicitly overturned its holding on a separate matter. It is not for the district court to hold that the Supreme Court has implicitly overturned itself. When the Supreme Court speaks directly to an issue, lower courts must follow that decision even if a later Supreme Court decision on a different issue appears to undermine its reasoning. *Rodriguez de Quijas v. Shearson/Am. Express,* Inc., 490 U.S. 477, 484 (1989); *United States v. Weaver*, 267 F.3d 231, 250-51 (3d Cir. 2001). It is for the Supreme Court to overturn its own rulings. *Rodriguez de Quijas*, 490 U.S. at 484; *Weaver*, 267 F.3d at 251. We are bound by *Maleng*. Therefore, because we lack subject matter jurisdiction, we shall deny the motion for reconsideration.

*Certificate of Appealability*

As an alternative to reconsideration, Vasquez seeks a certificate of appealability ("COA") under 28 U.S.C. § 2253. A petitioner "has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). Rather, a petitioner must obtain a COA from the district court or court of appeals to appeal the district court's denial of the petition. 28 U.S.C. § 2253(c)(1); *see also Gonzalez v. Thaler*, 132 S.Ct. 641, 649 n.5 (2012) (noting that district courts have the power to issue COAs); *Walker v. Gov't of the V.I.*, 230 F.3d 82, 89-90 (3d Cir. 2000) (discussing the COA requirement). If no COA has been issued, the court of appeals does not have jurisdiction

to consider the appeal. *Miller-El*, 537 U.S. at 336.

We dismiss Vasquez's petition on two procedural grounds–untimeliness and lack of subject matter jurisdiction. Thus, Vasquez must demonstrate that: (1) reasonable jurists would find it debatable whether he has stated a valid underlying constitutional claim and: (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Satizabal v. Folino*, 318 F. App'x 78, 80-81 (3d Cir. 2009); *Fenton*, 2011 WL 3515376, at *1.[8]

Our ruling that Vasquez's petition is untimely is not debatable by jurists of reason. It cannot plausibly be argued that *Padilla* recognized a new right that is retroactively applicable on collateral review. Reasonable jurists could debate whether the Third Circuit in *Orocio* correctly held that *Padilla* announced an "old rule" under *Teague*. However, even if *Padilla* announced a "new rule," it is clear that *Padilla's* rule does not fall under either of the two exceptions to *Teague's* maxim of non-retroactivity for new rules. *Padilla* did not "place[] certain kinds of criminal conduct beyond the power of the criminal law-making authority to proscribe," nor was it "a watershed rule of criminal procedure that alters our understanding of *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Orocio*, 645 F.3d 637 (quoting *Teague*, 489 U.S. at 311) (internal quotations and alterations omitted). The Supreme Court has held that only a decision of the magnitude of *Gideon v. Wainwright*, 372 U.S. 335 (1963), which recognized an indigent criminal defendant's right to a court-appointed attorney, is

---

[8] If we dismissed the petition on the merits of his constitutional claim, Vasquez would only have to show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Because we dismiss the petition on procedural grounds, he must also show that our procedural rulings are debatable among reasonable jurists. *Id.*

sufficient to satisfy *Teague's* "watershed" exception. *Beard v. Banks*, 542 U.S. 406, 417-18 (2004). Although *Padilla* may be a significant opinion for noncitizen defendants deciding whether to plead guilty, it clearly does not alter our system of criminal procedure in any extent comparable to *Gideon*. *See United States v. Chang Hong*, – F.2d –, No. 10-6294, 2011 WL 3805763, at *9 (10th Cir. Aug. 30, 2011) ("Simply put, *Padilla* is not *Gideon*."). Thus, it is clear beyond reasonable debate that *Padilla* does not provide a triggering event for the statute of limitations under § 2244(d)(1)(C).

Whether our ruling on subject matter jurisdiction is debatable among reasonable jurists presents a more difficult question. Another court in this district recently denied a petitioner's request for a COA in a case with virtually identical facts. *See Fenton*, 2011 WL 3515376, at *2 (Schiller, J.).[9] Fenton pleaded guilty to a drug offense in state court. After he completed his sentence, he filed for habeas relief in federal court, arguing that he was in custody because he faced possible deportation. Like Vasquez, Fenton argued that *Padilla* changed the definition of "in custody" such that it now includes individuals who might be deported because they have been convicted of a crime. Judge Schiller, rejecting that argument, held that Fenton was not in custody when he filed his petition. *Id.* Judge Schiller also denied Fenton's request for a COA, stating that "courts across the country have concluded that removal proceedings and removal itself–much less the possibility of removal proceedings–do not constitute custody for habeas purposes," and that "[r]easonable jurists thus could not find the Court's denial of habeas relief debatable." *Id.*

The Third Circuit upheld Judge Schiller's ruling, including his denial of a COA.

---

[9] Fenton was represented by the same attorney as Vasquez. The two cases were filed on the same day.

*Fenton v. Attorney Gen. of PA*, No. 11-3297 (3d Cir. Nov. 9, 2011). In its order, the court stated that "[f]or substantially the same reasons given by the District Court, Appellant has not shown that reasonable jurists would debate the District Court's denial of his motion for reconsideration of its dismissal of his petition . . . ." We shall follow the Third Circuit's guidance in *Fenton* and deny Vasquez a COA.

## Conclusion

Vasquez did not file his petition until nearly ten years after he was convicted and more than nine years after his PCRA petition was denied. The Supreme Court's decision in *Padilla* announcing an "old rule" under *Teague* does not provide Vasquez a triggering event for the statute of limitations under § 2244(d)(1)(C). Therefore, his petition is untimely.

We lack subject matter jurisdiction because Vasquez had completed his sentence when he filed his habeas petition and therefore was not in custody. Thus, we deny Vasquez's motion for reconsideration.

Vasquez has failed to show that reasonable jurists could debate our timeliness and subject matter jurisdiction rulings. We therefore shall deny his request for a COA.